# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, v. JOHNATHAN EDWARD BROWN, *Defendant.* | CRIMINAL ACTION NO. 3:22-cr-00004-TES-CHW-2 |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND MOTION TO SEVER

Before the Court is Defendant Johnathan Edward Brown's Motion to Suppress evidence obtained because of law enforcement's search and seizure of his cell phone. *See* U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347, 351 (1967); *United States v. Young*, 909 F.2d 442, 444–45 (11th Cir. 1990). Although Defendant concedes the underlying search warrant of his Co-Defendant's apartment was valid, he nonetheless contends that the specific search and seizure of his cell phone that law enforcement agents found within the apartment violated his Constitutional rights. In other words, because he was a "mere temporary resident[]" in the apartment and his cell phone was one of his personal effects, the law enforcement agents conducting the search and seizure should have obtained a separate warrant before searching his cell phone. [Doc. 58, p. 3]. After consideration of the parties' briefs and with the benefit of oral argument, the Court **DENIES** Defendant's Motion to Suppress. [Doc. 58].

Also before the Court is Defendant's Rule 14 Motion for Relief from Prejudicial Joinder ("Motion to Sever"). [Doc. 59]. Defendant argues that because the Government will likely introduce evidence related to his Co-Defendant Wade's gang activity, and Defendant "is not affiliated with any gang," the Court should sever the Co-Defendants' trials to avoid prejudice to Defendant from gang-related evidence. [*Id.* at 6]. The Government objects to Defendant's motion. [Doc. 64]. For the reasons discussed below, the Court also **DENIES** Defendant's Motion to Sever. [Doc. 59].

## PROCEDURAL BACKGROUND

On February 8, 2022, the Government obtained a multi-count indictment charging Defendant and two Co-Defendants, Gregory Wade ("Wade") and D'Angelo Perkins ("Perkins"), with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine and Fentanyl (Count 1), and Possession with Intent to Distribute Cocaine and Fentanyl (Count 2).[1] [Doc. 1, pp. 1–2]. The indictment charged Wade and Perkins with firearms offenses in Counts 3–6. [*Id.* at pp. 2–4]. On April 19, 2022, Defendant entered a plea of not guilty. [Doc. 29]; [Doc. 32]. On March 6, 2023, Defendant filed a Motion to Suppress, [Doc. 58], and a Motion to Sever, [Doc. 59].

---

[1] Perkins has not been arrested and remains a fugitive from justice.

# FACTUAL BACKGROUND[2]

In 2018, the FBI's Safe Streets Gang Task Force and the Athens-Clarke County Police Department (ACCPD) Gang Unit began investigating Wade and members of the 1831 Piru Bloods, a violent street gang that traffics large amounts of illegal narcotics in the Athens area. In April 2021, the Court authorized a wiretap of Wade's cell phone and Instagram account. Law enforcement agents intercepted conversations revealing that Wade and others were trafficking illegal narcotics in Athens and that they stored and disturbed drugs from Wade's home. The conversations also led law enforcement agents to believe that they kept multiple firearms there too.

On July 13, 2021, GBI Special Agent Rebecca Herold applied for a warrant in the Clarke County Superior Court to search Wade's apartment at 355 Jennings Mill Parkway, Apartment 333, in Athens. *See* [Doc. 68-1]. Superior Court Judge Lawton Stephens found probable cause and signed the search warrant the same day. [Doc. 68-2, pp. 2–3]; [Doc. 58-1, pp. 26–27]. The search warrant also authorized agents to search a gray 2008 Range Rover with Georgia Tag # RWT8029 registered to Wade. [*Id.* at 1]. The warrant authorized the seizure of narcotics and firearms, as well as the seizure *and search* of any cell phones in the apartment. [*Id.* at 1–3].

---

[2] Unless otherwise noted, the facts discussed in this Order come from the testimony of GBI Special Agent Rebecca Herold during Defendant's suppression hearing on April 24, 2023. *See* [Doc. 62]. The Court finds that a preponderance of the evidence establishes these facts. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Agent Herold gave a seventeen-page affidavit in support of the search warrant. *See* [Doc. 68-1, pp. 1–17]. Her affidavit outlined conversations she had intercepted over Wade's phone that revealed that Wade (and others, including Defendant) used his apartment to store and distribute drugs. For example, Agent Herold's affidavit stated:

> Since the interception of wire and electronic communications over [Wade's phone] began, agents have intercepted numerous voice call events where multiple people wanted to purchase narcotics from WADE including heroin, powder cocaine, crack cocaine, and marijuana while WADE was at [his apartment]. In many of these intercepted calls, WADE directed drug customers to his [apartment] and provided directions to the building number and the location of the apartment within the building. . . . Additionally, agents learned while monitoring several other calls events [*sic*] that WADE and his roommates, MARQWESE BUTLER (hereinafter "BUTLER"), **Unknown Male who is the user of telephone number 954-625-0675 (hereinafter "UM-0675")**, Unknown Male who is the user of telephone number 754-971-4239 (hereinafter "UM-4239") regularly maintain narcotics and cash assets at the above-described premises.

[*Id.* at 9 (emphasis added)].

On the morning of July 14, 2021, the Athens-Clarke County SWAT team executed entry into Wade's apartment, and the Safe Streets Gang Task Force conducted the search warrant for Wade's apartment. Wade jumped out of the third-story window upon law enforcement's entry, but law enforcement officers later apprehended him. Agents identified Defendant, who was on the sofa in the living room, as Unknown Male (UM-0675).

Detective Juan Guardado interviewed Defendant after agents conducted the search warrant, and Defendant admitted to staying at Wade's apartment for about two

4

weeks. However, law enforcement agents found a Geico car insurance bill addressed to Defendant at Wade's apartment address. They also found Defendant's high school diploma and other documents bearing his name in a safe in a bedroom closet.

Relevant to Defendant's Motion to Suppress, law enforcement agents found his iPhone cell phone with the telephone number 954-625-0675 on the couch in the living room where Defendant said he slept. After the agents found Defendant's phone, Defendant told Detective Guardado that he owned it. Law enforcement later searched Defendant's cell phone and found conversations revealing Defendant's involvement in acquiring and distributing fentanyl.

## MOTION TO SUPPRESS

### A. Legal Standard

The movant bears the initial burden of persuading the Court, through specific factual allegations and supporting evidence, that it should suppress the evidence. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Once the movant establishes a basis for the motion, the burden shifts to the Government to prove by a preponderance of the evidence that the search or seizure of evidence was legally and factually justified. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (citation omitted) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). Finally, "[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds

set by the warrant," *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 394 n. 7 (1971), to assure that those "searches deemed necessary [remain] as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

    B.    **Defendant's Motion to Suppress**

The text of the search warrant itself authorized the search and seizure of cell phones, as well as narcotics and firearms, located inside Wade's apartment. *See* [Doc. 68-2, pp. 1–3]; [Doc. 58-1, pp. 23–27]. Specifically, the warrant authorized the search of "[c]ellular phones, tablets, computers, and records and information related to the purchase of these items." [Doc. 58-1, p. 24]; *see also* [*id.* at 25]. The warrant also gave law enforcement specific authority "to enter, search and seize within ten days of this date, the person, premises, or property described above." [*Id.* at p. 26]. Finally, Judge Stephens, who signed the search warrant, also signed an "Other Party Clause" attached to the warrant, which stated that "there are reasonable grounds to believe that other persons located on the within described premises have been or are involved in the commission of the crime for which this warrant is issued," and therefore, "all such persons located on the premises [are ordered to] be searched pursuant to the authority granted by this search warrant." [*Id.* at p. 27].

    Put simply, the words of the warrant supported the search and seizure of Defendant's cell phone because the cell phone fell within the items the warrant authorized law enforcement officers to search. Additionally, the other-persons clause

provided additional support for the search of Defendant's phone regardless of whether Defendant was a visitor or instead lived at Wade's apartment permanently.

This case is unlike the case of *Ybarra v. Illinois*, 444 U.S. 85 (1979), on which Defendant heavily relies. In that case, the Supreme Court decided that the search of a customer who happened to be at a bar during a search pursuant to a premises warrant was unlawful absent "probable cause particularized with respect to that person." *Ybarra*, 444 U.S. at 91. There, a state court judge issued a warrant authorizing the search of the tavern and the person of the bartender for "evidence of the offense of possession of a controlled substance." *Id.* at 85. However, upon entering the tavern, police officers announced their purpose and conducted a "cursory search for weapons" of every person who just happened to be in the bar at that time. *Id.* The Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* However, the *Ybarra* decision did not hold that the relationship between the person searched, the warrant, and the premises is irrelevant in determining whether a search falls outside the permissible scope of the Fourth Amendment. Indeed, the lack of such a relationship pointed to a finding of no probable cause in *Ybarra*. *See Young*, 909 F.2d at 444–45. Defendant's reliance on *Ybarra* is unavailing.

During the execution of the search warrant, law enforcement agents found Defendant inside the apartment. Detective Guardado questioned Defendant, who

7

admitted that he had been staying there for approximately two weeks and owned the phone that the officers found. Moreover, the mail addressed to Defendant, his high school diploma, and other documents law enforcement agents found in a closet indicate that Defendant was not some temporary guest or a mere transient visitor. Unlike in the case of *Ybarra*, when law enforcement officers obtained a warrant to search Wade's apartment, they knew that Wade and his roommates—including Defendant—were engaging in illegal activity. *See* [Doc. 58-1, p. 14]; [Doc. 68-1, p. 9].

In other words, law enforcement agents did not seize Defendant's cell phone simply because he was in Wade's apartment—a place where law enforcement suspected criminal activity. Although Agent Herold didn't include Defendant's name in her affidavit, law enforcement agents knew that someone with the telephone number 954-625-0675 spoke with Wade about illegal narcotics several times leading up to the execution of the warrant. More importantly, law enforcement agents did not find Defendant's cell phone during a search of his person. Instead, they found it in a common area—on the couch in the living room—pursuant to a lawful warrant authorizing the search of Wade's apartment.

Finally, the fact that the search warrant did not mention Defendant's name—Johnathan Edward Brown—does not make the search and seizure of his cell phone, or the underlying search warrant, unconstitutional. Omitted facts only become relevant if they preclude or defeat probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th

Cir. 1997); *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Here, the omission of Defendant's given name does not. Of course, including Defendant's name would undoubtedly have bolstered a finding of probable cause. But, despite that omission, Agent Herold's affidavit still contained a nexus between the suspect's apartment, the suspect, and the crime that officers were investigating. That's all the law requires.

Even if the warrant did not support a search and seizure of Defendant's cell phone, which the Court finds it did, the evidence obtained would still be admissible under the good-faith exception. Under this exception, the law does not require that courts suppress evidence obtained by law enforcement acting "in objectively reasonable reliance" on a warrant that a court may later find lacked probable cause. *Leon v. United States*, 468 U.S. 897, 922 (1984); *Herring v. United States*, 555 U.S. 135, 139–43 (2009).

Indeed, "[u]nder *Leon*, 'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003) (quoting *Leon*, 468 U.S. at 922). "Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23; *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990); *United States v.*

*Vanbrackle*, 397 F. App'x 557, 559–60 (11th Cir. 2010). The Eleventh Circuit instructs that courts should refrain from evaluating good faith based on whether "thoughtful and competent jurists" would have understood the shortcomings in the warrant. *Taxacher*, 902 F.2d at 871. And, a court may also look outside the four corners of an affidavit when determining whether an officer acted in good faith when relying on an invalid warrant. *Martin*, 297 F.3d at 1309.

Because a "warrant issued by a magistrate [judge] normally suffices to establish good faith," the "good-faith exception applies 'in all but four limited sets of circumstances.'" *United States v. Whitehurst*, 614 F. App'x 411, 414 (11th Cir. 2015) (quoting *Martin*, 297 F.3d at 1313); *Leon*, 468 U.S. at 922. These four circumstances are:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Robinson*, 336 F.3d at 1296. As explained below, none of the four circumstances exist here. The Court finds that a well-trained officer in these circumstances would not have known that the search of Defendant's cell phone was illegal, but believed probable cause supported it.

First, Agent Herold's affidavit was not false, nor did it mislead the judge who

10

issued the warrant. The Court doesn't find and Defendant doesn't suggest that Agent Herold misled or withheld material information from the issuing judge.

Second, nothing indicates that the issuing judge "wholly abandoned [his or her] judicial role" by issuing the warrant. *See Martin*, 297 F.3d at 1317–18 (holding that the issuing magistrate judge who issued a search warrant had not wholly abandoned his judicial role when there was no evidence that he either: (1) failed to read the affidavit, or (2) relied on a close, personal relationship with the affiant when he signed the warrant).

Third, the warrant was not facially deficient—"*i.e.*, failing to particularize the place to be searched or the things to be seized"—such that the law enforcement officers executing the warrant could not have presumably thought it was valid. *Martin*, 297 F.3d at 1313. The warrant included cell phones and an other-persons clause that gave law enforcement agents further support to search Defendant's phone. [Doc. 58-1, pp. 23–26]; [Doc. 68-2, pp. 1–3].

Fourth, Agent Herold's affidavit did not lack indicia of probable cause such that a reasonable officer could not have relied upon it. An affidavit lacks indicia of probable cause when it contains a "statement of nothing more than conclusory allegations." *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998) (citing *Leon*, 468 U.S. at 915). An affidavit that "sufficiently explain[s] the criminal activity . . . and sufficiently link[s] the criminal activity" to a residence will satisfy the requisite standard. *Martin*, 297 F.3d at 1315 (finding that an affidavit had indicia of probable cause despite Defendant not

being linked to the affidavit). Agent Herold's affidavit provided ample support for probable cause for the issuance of the warrant, especially considering that she was aware of phone conversations between Defendant and Wade regarding narcotics.

Accordingly, the Court **DENIES** Defendant's Motion to Suppress [Doc. 58].

## MOTION TO SEVER

Defendant's primary argument to support severance stems from his assertion that during all relevant times, he was neither a member of any gang nor involved in any violent activity, but his Co-Defendant Wade is alleged to be a higher-ranking member of the 1831 Piru gang in Athens and involved in a violent drug trafficking organization. Defendant denies the allegation that he was engaged in a plan or scheme to possess and distribute illegal narcotics with Wade and his associates. Specifically, Defendant believes "there is a real threat of cumulative and prejudicial spillover evidence from Wade's significant role in the violent drug trafficking organization." [Doc. 59, p. 4]; *see also United States v. Mosquera*, 886 F.3d 1032, 1041–42 (11th Cir. 2018); *United States v. Chavez*, 584 F.3d 1354, 1360–61 (11th Cir. 2009).

Rule 8(b) of the Federal Rules of Criminal Procedure governs joinder of defendants and offenses in cases of multiple defendants. Rule 8(b) permits the government to charge two or more defendants in the same indictment

> if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

12

Fed. R. Crim. P. 8.

The Eleventh Circuit instructs that courts should broadly construe Rule 8 in favor of joinder. *See United States v. Dominguez*, 226 F.3d 1235, 1238 (11th Cir. 2000) (citing *United States v. Weaver*, 905 F.2d 1466 (11th Cir. 1990)).

Rule 14 provides, in turn, that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When presented with a motion pursuant to Rule 14, the Court must "balance the defendant's right to a fair trial against the public's interest in efficient and economic administration of justice." *United States v. Berkman*, 433 F. App'x 859, 862 (11th Cir. 2011). "In conducting this analysis, the district court must grant a motion for severance only where denial would 'result[] in compelling prejudice against which the district court [can] offer[] no protection." *United States v. Whitfield*, Case No. 08-60229-CR, 2009 WL 3042394, at *3 (S.D. Fla. Sept. 18, 2009) (quoting *United States v. Dowd*, 451 F.3d 1244, 1249 (11th Cir. 2006)) (alterations in original). In *United States v. Walser*, the Eleventh Circuit reaffirmed that "some prejudice" is insufficient to mandate severance; instead, the defendant carries a heavy burden to go beyond mere conclusory allegations and show that he would receive an unfair trial and suffer compelling prejudice. 3 F.3d 380, 386 (11th Cir. 1993).

Regarding requests to sever joint trials, the Supreme Court has stated that

because limiting instructions are usually sufficient to cure any prejudice, "severances need be granted only if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence even if limiting instructions are given." *United States v. Lopez*, 649 F.3d 1222, 1234-35 (11th Cir. 2011) (citations and quotations omitted).

Because the Government charges Defendant with the overarching conspiracy in Count One of the Indictment, there's no significant concern of prejudice sufficient to warrant a separate trial from his Co-Defendant, Wade. In other words, the Court believes that appropriate limiting or curative instructions could resolve Defendant's concerns about potential spillover evidence related to gang activity at trial. *See United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006) ("[A] court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt."); *United States v. Smith*, 918 F.2d 1501, 1509-10 (11th Cir. 1990) ("A defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the evidence at trial is applicable only to co-defendants. The possible prejudicial effects of such disparity can be significantly alleviated if the trial judge is careful to instruct the jury that it must consider the evidence against each defendant on a separate and independent basis.") (internal citation omitted).

Additionally, the Court will instruct the jury that the Defendants are only on trial for the crimes charged in the indictment and that it cannot convict either Defendant

14

simply because it believes that one or both may have committed an act in the past that the indictment doesn't charge. *See* Eleventh Circuit Judicial Council's Pattern Jury Instructions. And unlike state law on criminal gang activity, there's no corollary federal statute that could provide a basis for charging Defendant with criminal gang activity as a separate, initial offense. *See United States v. Matthews*, 312 F.3d 652, 661–62 (5th Cir. 2002) (holding that 18 U.S.C.A. § 521, the federal law on criminal street gangs, is "a sentence enhancement statute, not a separate criminal offense") (citations omitted). These, taken together, will limit the potential spillover effect from potential evidence related to gang activity that Defendant seeks to exclude.

Defendant has failed to show that the evidence at a joint trial would be such that a reasonable jury could not assess the involvement, or lack of involvement, of Defendant from the activities of Wade. Accordingly, the Court **DENIES** Defendant's Motion to Sever [Doc. 59]. This Court will try both Defendants together beginning June 20, 2023.

**SO ORDERED**, this 27th day of April, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**